

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EQUITY RESIDENTIAL, EQUITY )
RESIDENTIAL PROPERTIES MANAGEMENT )
CORP., EQUITY RESIDENTIAL PROPERTIES )
MANAGEMENT CORP. II, and ERP )
OPERATING LIMITED PARTNERSHIP, )
                                                   )
                    Plaintiffs, )
                                                   )        No.   04 C 3812
v.                                                  )
                                                   )        Judge Robert W. Gettleman
KENDALL RISK MANAGEMENT, INC., )
COBBS, ALLEN & HALL, INC., COBBS, )
ALLEN & HALL OF GEORGIA, INC. )
CHARLES K. ("KENDALL") McEACHERN, )
VERLYN TANKSLEY, and AXIS )
SPECIALTY INSURANCE COMPANY, as )
successor in interest to CONNECTICUT )
SPECIALTY INSURANCE COMPANY, )
                                                   )
                    Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Equity Residential, Equity Residential Properties Management Corp., Equity Residential Properties Management Corp. II, and ERP Operating Limited Partnership filed an eleven-count third amended complaint against defendants Kendall Risk Management, Inc ("Kendall"), Cobbs, Allen & Hall, Inc. ("Cobbs"), Cobbs, Allen & Hall of Georgia, Inc. ("Cobbs Georgia"), Charles K. McEachern ("McEachern"), and Verlyn Tanksley ("Tanksley") (collectively the "Kendall Defendants"), and defendant Axis Speciality Insurance Company, as successor in interest to Connecticut Speciality Insurance Company ("Connecticut Speciality"). Plaintiffs allege violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and the Illinois Consumer Fraud and Deceptive Business Practices Act,

1

815 ILCS 505/2, and assert state law claims for breach of fiduciary duty, civil conspiracy, fraud, unjust enrichment, and negligence against the Kendall Defendants. Plaintiffs also seek a declaration that the Kendall Defendants have a contractual obligation to indemnify plaintiffs. Plaintiffs allege breach of contract against Connecticut Speciality, and seek a declaration that Connecticut Speciality has a duty to defend plaintiffs.

Subject matter jurisdiction of the RICO claims is based on 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), and jurisdiction over the state law claims is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Plaintiffs previously filed a second amended complaint asserting the same claims against the same parties. In a Memorandum Opinion and Order dated April 12, 2005, this court granted the Kendall Defendants' motion to dismiss the RICO counts because plaintiffs failed to satisfy the "pattern" element of a RICO claim, and declined to exercise supplemental jurisdiction over the remaining state law counts. Equity Residential v. Kendall Risk Management, 2005 WL 1026686 (N.D.Ill. Apr. 12, 2005). On May 5, 2005, this court granted plaintiffs' motion to file a third amended complaint with additional and newly discovered factual allegations regarding the RICO counts.

The Kendall Defendants have moved to dismiss plaintiffs' third amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) on a number of grounds, including that plaintiffs' RICO claims are barred in part by a settlement agreement and continue to fail to state a claim upon which relief may be granted. Connecticut Speciality has moved to dismiss plaintiffs' second amended complaint pursuant to Fed. R. Civ. P. 12(b)(1), arguing that the court should decline to

exercise supplemental jurisdiction over the state law claims against Connecticut Speciality.[1] For the reasons discussed herein, the Kendall Defendants' motion to dismiss is granted in part and denied in part. Connecticut Speciality's motion to dismiss is denied.

## FACTS[2]

After four complaints, two fully briefed motions to dismiss, and a full memorandum opinion and order, the parties and the court are well-acquainted with the general factual allegations of the instant case. A fuller recitation is contained in this court's previous opinion, Equity Residential, 2005 WL 1026686. Briefly stated, plaintiffs, the largest real estate investment trust in the country, brought this action under civil RICO and several state-law theories to recover damages resulting from the Kendall Defendants' allegedly wrongful conduct in connection with the procurement and termination of an insurance policy issued by defendant Connecticut Speciality.

In Fall 1999, plaintiffs purchased a general liability insurance policy from Connecticut Speciality ("Connecticut Policy") based on representations by Kendall, its insurance agent, that it was a three-year, pre-paid insurance program with a policy period from December 15, 1999, through December 15, 2002. Plaintiffs first learned in December 2000, from a third party, that Kendall, Cobbs, Cobbs Georgia, McEachern, and Tanksley each had conflicts of interest that interfered with their dealings with plaintiffs. Plaintiffs subsequently discovered further

---

[1]Connecticut Speciality states in its reply that its motion is mistakenly titled in the alternative, and that it does not seek in the alternative to transfer pursuant to 28 U.S.C. § 1404(a).

[2]For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

misrepresentations, secret commissions, and kickbacks. Plaintiffs quickly terminated Kendall and determined that plaintiffs would no longer use Cobbs or Cobbs Georgia as insurance brokers. On or about August 1, 2001, plaintiffs entered into a confidential settlement and general release (the "Settlement Agreement") with Cobbs, Kendall, Cobbs Georgia, and others (the "Settled Defendants"). The Settlement Agreement released "any and all claims" prior to the execution of the agreement against the Settled Defendants (the "Released Claims"), except it reserved all claims "incurred as a result of the procurement and subsequent termination of [plaintiffs'] general liability insurance policy with Connecticut Speciality Insurance Company... ." McEachern and Tanksley were not parties to the Settlement Agreement, which specifically reserved certain claims against them. Plaintiffs also entered into a tolling agreement ("Tolling Agreement") with the Settled Defendants[3], effective November 12, 2002, which terminated on January 1, 2004. Plaintiffs filed their initial complaint in the instant action on June 3, 2004.

On November 25, 2002, a class action was filed in Florida state court by current and former tenants of plaintiffs' properties (the "Yates Action"), alleging that certain of plaintiffs' collection practices violate Florida law. The Yates Action sought tens of millions of dollars in damages from plaintiffs for conduct during the four years prior to November 25, 2002. Trial in the Yates Action commenced on August 23, 2004, and on December 1, 2004, the trial court awarded the putative Yates class $1,629,380.37 in damages. Final judgment has not yet been entered. Plaintiffs allege that they have also incurred almost $2,000,000 to date in legal fees

---

[3]Plaintiffs allege that all of the Kendall Defendants were parties to the Tolling Agreement, which they attach to their third amended complaint. The Tolling Agreement, however, states that it is between the parties to the Settlement Agreement, which do not include Tanksley and McEachern.

defending the Yates Action, and may be required to pay attorney's fees to the class plaintiffs.

After learning that the Connecticut Policy would terminate December 15, 2000, rather than December 15, 2002, plaintiffs were forced to secure different general liability insurance. According to plaintiffs, by Fall 2000 the insurance market was less favorable for insureds, and insurers were demanding substantial premium increases. Plaintiffs ultimately purchased two separate year-long replacement policies ("Replacement Policies"). According to plaintiffs, the Replacement Policies had lower premiums than the Connecticut Policy, but had much larger deductibles and lower aggregate coverage limits. Plaintiffs claim that damages related to the claims in the Yates Action, for the period from December 15, 2000, through December 15, 2002, would have been covered under the Connecticut Policy as "advertising injury" without any self-insured retention, and that the self-retention costs under the Replacement Policies are significantly larger.

Plaintiffs filed a lawsuit against Connecticut Speciality and another insurer in the Circuit Court of Cook County, Illinois on May 11, 2004, seeking a declaratory judgment that Connecticut Specialty must defend plaintiffs in the Yates Action. See Equity Residential, et al. v. Admiral Ins. Co. et al, No. 04 CH 07746. The Cook County action has been stayed, apparently pending the resolution of the instant lawsuit.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set

of facts that would entitled her to relief based on her claim. Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D.Ill. Apr. 4, 2003). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

## DISCUSSION

### I. Counts III through VIII

Counts III through VIII of the third amended complaint assert various state law claims against the Kendall Defendants: (1) breach of fiduciary duty (Count III); (2) violation of Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 (Count IV); (3) civil conspiracy to and/or aiding and abetting breach of fiduciary duties (Count V); (4) fraud (Count VI); (5) unjust enrichment (Count VII); and (6) negligence (Count VIII). The Kendall Defendants argue that all of plaintiffs' claims are barred by 735 ILCS 5/13-214.4, which sets a two-year statute of limitations for actions against insurance providers.[4] For the reasons discussed below, the Kendall Defendants are correct with respect to Counts III through VIII only.

Plaintiffs' argument that their causes of action did not accrue until the filing of the complaint in the Yates Action is unpersuasive because plaintiffs were injured when the Connecticut Policy was terminated after only a year. In their earlier briefs, which plaintiffs incorporate into their response to the instant motion to dismiss, plaintiffs cite Broadnax v. Morrow, 326 Ill. App. 3d 1074 (4th Dist. 2002), and Commonwealth Ins. Co. v. Stone Container

---

[4]Section 13-214.4 provides: "All causes of action brought by any person or entity under any statute or any legal or equitable theory against an insurance producer, registered firm, or limited insurance representative concerning the sale, placement, procurement, renewal, cancellation of, or failure to procure any policy of insurance shall be brought within 2 years of the date the cause of action accrues." 735 ILCS 5/13-214.4.

Corp., 323 F.3d 507 (7th Cir. 2003), in support of their argument that they suffered no injury until an insurance claim was filed. Broadnax and Stone Container, however, are readily distinguishable because the plaintiffs in those cases did not discover the lack of coverage until a claim was filed and the insurer denied coverage. Broadnax, 326 Ill. App. 3d at 1081; Stone Container, 323 F.3d at 509-12. Plaintiffs in the instant case did not have to wait until a claim was filed and denied to know that it was not covered by the Connecticut Policy because they knew by the end of 2000 that the policy had terminated.

Upon learning that the Connecticut Policy was ending, plaintiffs could have asserted a cause of action seeking damages equal to the cost of a replacement policy providing the same coverage and for the same period of time as they had believed the Connecticut Policy would provide. Instead, plaintiffs elected to purchase the Replacement Policies with lower premiums than the Connecticut Policy, but which required plaintiffs to assume significantly more uninsured exposure. Had no claims been filed under the Replacement Policies, plaintiffs would have enjoyed an overall savings in insurance costs. That a claim was filed resulting in larger damages to plaintiffs under the Replacement Policies than they would have suffered under the Connecticut Policy does not affect the moment of accrual of the cause of action. Plaintiffs' unfortunate luck merely demonstrates the nature of insurance policies, which derive their value from the extent of coverage provided in the eventuality of a particular kind of loss or claim, not from the value of any claim ultimately paid.

The statute of limitations under 735 ILCS 5/13-214.4 began to run at the end of 2000, when plaintiffs became aware of the Kendall Defendants' alleged gross negligence and fraud, that the Connecticut Policy terminated after a year, and that the Replacement Policies subjected

7

plaintiffs to higher uninsured exposure. At least twenty-two months passed before the Tolling Agreement was executed in November 2002. Another five months passed untolled between the the expiration of the Tolling Agreement on January 1, 2004, and plaintiffs' filing of the complaint on June 3, 2004. Accordingly, the court grants the Kendall Defendants' motion to dismiss Counts III through VIII as time-barred under the two-year statute of limitations.

## II.   RICO (Counts I and II)

Counts I and II of plaintiffs' third amended complaint allege that the Kendall Defendants violated RICO, 18 U.S.C. §1962(c), and RICO conspiracy, 18 U.S.C. §1962(d), respectively.

A four-year statute of limitations applies to all actions brought under RICO. Agency Holding Corp. v. Malley-Duff & Associates, Inc., 483 U.S. 143, 156 (1987); see also Rose v. Mony Life Ins. Co., 2000 WL 1898474, at *3 (N.D.Ill. Dec. 21, 2000). The statute begins to run when a plaintiff knew or should have know of its injuries. McCool v. Strata Oil Co., 972 F.2d 1452, 1464 (7th Cir. 1992). Plaintiffs' cause of action accrued in December 2000, as discussed above, and accordingly the RICO claims are not time-barred.

This court previously held that plaintiffs have sufficiently alleged predicate acts, but that the second amended complaint failed to allege a pattern of racketeering activity under either the closed or open-ended theory of continuity as required to state a claim under § 1962(c) or (d). 2005 WL 1026686, at *6-10. Defendants argue that after their "fourth unsuccessful bite at the apple," plaintiffs again fail to state a RICO claim. Defendants challenge plaintiffs' amended RICO counts largely by repeating their earlier arguments and without squarely addressing the new and enhanced allegations in the third amended complaint. Unlike previous pleadings, however, the third amended complaint sufficiently asserts a RICO claim under the theory of

8

open-ended continuity by sufficiently alleging that the "predicate acts or offenses are part of an ongoing entity's regular way of doing business," Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1023 (7th Cir. 1992) (quoting H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 242-43 (1989)). Plaintiffs' pattern allegations also satisfy the particularity requirements of Fed. R. Civ. Rule 9(b), which apply to RICO claims. See Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992).

Plaintiffs allege in the third amended complaint that the predicate acts described in this court's earlier opinion were part of a "regular way of doing business" for the Kendall Defendants, and that the principal purpose of Cobbs Georgia "was to collect illegal commissions from insurers...and to kick back those commissions to Kendall." Plaintiffs also allege that the racketeering activities were incorporated into the larger workings of the companies, and involved many employees, including McEachern and Tanksley. "Kendall instructed the common employees of Cobbs, Cobbs Georgia and Kendall to conceal the relationship between them upon pain of termination. Kendall corrupted the employees of Cobbs, Cobbs Georgia and Kendall by compelling them to act in a dishonest manner and to participate in these fraudulent schemes." According to plaintiffs, the Kendall Defendants employed tactics such as intentionally misleading letterhead, false business fronts, and undisclosed alter-egos to hide their unlawful activities.

This court previously held that plaintiffs' pattern allegations failed to satisfy the particularity requirements of Rule 9(b) because plaintiffs' allegations about third party victims of the Kendall Defendants' schemes were based on "information and belief," and plaintiffs "fail[ed] to provide any details regarding the alleged fraud against other companies, or the basis of their

9

suspicions." 2005 WL 1026686, at *8. The third amended complaint has cured this defect by affirmatively stating "the circumstances constituting fraud" with particularity, as required by Rule 9(b) and the Seventh Circuit's opinion in Uni*Quality. In particular, the third amended complaint provides more specific and certain details regarding multiple schemes perpetrated against plaintiffs and Lane Realty Management Corp. ("Lane"), another insured. Plaintiffs' allegation that the Kendall Defendants "engaged in a similar pattern of racketeering" with other insureds, including Lane, is no longer based merely on information and belief, and plaintiffs have added factual allegations in support of this claim. Cf. Uni*Quality, 974 F.2d at 923 (allegations made on information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for its suspicions). The third amended complaint states that after this court's April 12, 2005, ruling plaintiffs' counsel confirmed through communications with a "whistle-blower" who was a "key insider" at Cobbs Georgia and counsel for Lane that Lane suffered damages "from similar fraudulent schemes involving multiple predicate acts" committed by the Kendall Defendants.

Accordingly, plaintiffs have sufficiently stated a RICO claim.

The Kendall defendants also argue, as they did in their motion to dismiss the second amended complaint, that plaintiffs are precluded by the Settlement Agreement from pleading certain allegations. As this court noted in its earlier opinion, it appears that the Kendall Defendants are correct that plaintiffs are precluded from using the Released Claims to plead their RICO claims. 2005 WL 1026686, at *5 n. 5. The court, however, need not reach that ultimate issue because even without the Released Claims, for which plaintiffs have disavowed damages, plaintiffs have sufficiently pled their RICO claims. As discussed above, plaintiffs allege myriad

predicate acts related to the Connecticut Policy, which are specifically excluded from the Released Claims. Plaintiffs' allegations regarding similar schemes against third-parties are not affected by the Settlement Agreement. Taken together, these allegations sufficiently allege that the predicate acts were part of a "regular way of doing business." Accordingly, plaintiffs' RICO claims are not barred by the Settlement Agreement.

For the reasons stated above, the court denies the Kendall Defendants' motion to dismiss Counts I and II.

### III. Indemnification claim against Kendall (Count IX)

Count IX of the third amended complaint seeks declaratory relief requiring Kendall to indemnify Equity Residential for losses arising from the Yates Action. The Service Agreement requires Kendall to indemnify plaintiffs[5] for losses due to third party-claims arising from Kendall's gross negligence in Kendall's provision of services under the Service Agreement. Kendall argues that losses and damages related to the Yates Action have "nothing to do with Kendall or any services under the Service Agreement." The plain language of the Service Agreement, however, provides that gross negligence need not cause the third-party claim to trigger Kendall's indemnity obligations.

---

[5]Kendall argues that the duty to indemnify runs to Equity Residential Properties Trust only because it is the only plaintiff that is a party to the Service Agreement. Plaintiffs argue that all of the plaintiffs were intended beneficiaries of the Service Agreement, and thus all plaintiffs may maintain this claim. Kendall failed to file a reply in which it could have responded to this argument, and courts have held that a court determines third-party beneficiary status by determining "whether the contracting parties intended to confer a benefit upon a nonparty by their agreement." Dunlap v. First Nat'l Bank of Danville, 76 F. Supp. 2d, 948, 960 (C.D.Ill. 1999); see also Am. United Logistics, Inc. v. Catellus Dev. Corp., 319 F.3d 921, 930 (7th Cir. 2003) (a direct third-party beneficiary may enforce the contract because the contracting parties intended for the beneficiary to receive the benefits of the contract). Accordingly, if Count IX survives, it may be brought by all plaintiffs.

The indemnification provision of the Service Agreement covers "an actual loss, actual damage or third-party claim in any way arising from [Kendall's] gross negligence." Plaintiffs argue that even if the third-party claim - the Yates Action - does not arise from Kendall's gross negligence, plaintiffs' losses under do. Count IX alleges that Kendall "had a duty of care in procuring, reviewing and analyzing" the Connecticut Policy, that Kendall "violated that duty of care and was grossly negligent," and that plaintiffs have sustained substantial damages as a proximate result. As alleged, plaintiffs have stated a claim for indemnification pursuant to the Service Agreement, which covers losses and damages resulting from Kendall's gross negligence.

Accordingly, the court denies the Kendall Defendants' motion to dismiss Count IX.

## IV. Claims against Connecticut Specialty (Counts X and XI)

Count X of the third amended complaint seeks declaratory relief regarding Connecticut Specialty's duty to defend, and Count XI asserts a breach of contract claim alleging that Connecticut Specialty breached the terms of the Connecticut Policy by refusing to fully defend plaintiffs in the Yates Action. Connecticut Specialty argues Counts X and XI should be dismissed under 28 U.S.C. § 1367, which provides that a district court may decline to exercise supplemental jurisdiction over a claim "if in exceptional circumstances there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). The decision to retain supplemental claims is left to the discretion of the district court. Szumny v. American General Finance, 246 F.3d 1065, 1073 (7th Cir. 2001).

Connecticut Specialty's motion to dismiss identifies several other lawsuits involving plaintiffs, and suggests that these actions provide better fora for adjudicating plaintiffs' claims against Connecticut Specialty. These other actions, however, either do not involve Connecticut

12

Specialty as a party, or have been stayed pending the resolution of the instant case or dismissed with prejudice. For instance, Connecticut Speciality insists that it will intervene in a Florida state court action titled Genesis Indemnity Ins. Co. v. Equity Properties Trust, but that case was dismissed with prejudice. It appears, therefore, that only this court has before it active, pending claims against Connecticut Speciality in this matter. Connecticut Specialty also argues that its duty to indemnify plaintiffs will have to be decided by a Florida court because the class plaintiffs, whom Connecticut Specialty asserts are indispensable parties, are located in Florida. This concern is premature at best because plaintiffs have not asserted an indemnity claim against Connecticut Speciality.

A court may decline supplemental jurisdiction at its discretion, and Connecticut Speciality has failed to offer any cogent reason for the court not to adjudicate the claims before it, which are related to the other claims in this action. Accordingly, the court denies Connecticut Specialty's motion to dismiss Counts X and XI.

## CONCLUSION

For the reasons stated above, the court denies the Kendall Defendants' motion to dismiss Counts I and II, and Count IX. The court grants the Kendall Defendants' motion to dismiss Counts III through VIII with prejudice. The court denies Connecticut Speciality's motion to dismiss Counts X and XI. Defendants are directed to file answers to the counts of the third amended complaint that have not been dismissed on or before September 1, 2005. The parties are directed to file a joint status report using this court's form on or before September 8, 2005. The hearing set for August 30, 2005, is vacated and continued to September 14, 2005, at 9:00 a.m.

**ENTER:** August 11, 2005

Robert W. Gettleman
United States District Judge