**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **EQUITY RESIDENTIAL, EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORP., EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORP. II, and ERP OPERATING LIMITED PARTNERSHIP,** )<br><br>**Plaintiffs,** )<br><br>**v.** )<br><br>**KENDALL RISK MANAGEMENT, INC., COBBS, ALLEN & HALL, INC., COBBS, ALLEN & HALL OF GEORGIA, INC., CHARLES K. ("KENDALL") McEACHERN, VERLYN TANKSLEY, and ROYAL SURPLUS LINES INSURANCE COMPANY, as successor to the liabilities of CONNECTICUT SPECIALTY INSURANCE COMPANY,** )<br><br>**Defendants.** ) | **Case No. 04 C 3812**<br><br>**Magistrate Judge Morton Denlow** |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Equity Residential et al. (collectively "Equity") have moved to compel

Defendant Connecticut Specialty Insurance Company ("Connecticut Specialty") to produce

documents listed on Connecticut Specialty's privilege log. Connecticut Specialty has

produced several documents listed on its log, but otherwise objects to the motion on the

grounds that the remaining documents are privileged. Connecticut Specialty has moved to compel Equity to produce documents listed on its privilege log. Equity has produced two documents listed on its log, but otherwise objects to the motion on the grounds that the remaining documents are work product and that several of the documents are also privileged. For the reasons stated below, Equity's motion to compel is granted in part and denied in part, and Connecticut Specialty's motion to compel is denied.

## I. BACKGROUND FACTS

This case involves a dispute over the terms of an insurance policy purchased by Equity, through its brokers Kendall Risk Management, Inc. and Cobbs, Allen & Hall, Inc., from Connecticut Specialty through its agents Special Risk Underwriters, Inc. Equity Residential is a Maryland real estate investment trust with its principal place of business in Chicago, Illinois. Connecticut Specialty is a Connecticut corporation, engaged in the insurance business. Equity alleges that it purchased three years of insurance coverage, from December 15, 1999 to December 15, 2002, from Connecticut Specialty. On September 5, 2000, Equity received a notice of nonrenewal from Connecticut Specialty. Connecticut Specialty alleges that Equity purchased a one-year policy that was properly non-renewed.

By agreement of the parties, District Judge Gettleman bifurcated the issues in this case. The parties are presently litigating the issue of whether Connecticut Specialty was obligated to provide Equity with three years of insurance coverage.

During the course of discovery, both parties withheld certain documents from production due to their assertion that the documents were either work product, attorney-client

privileged, or both. Both parties also provided the other with a privilege log listing the documents it was withholding from production. Near the close of discovery, Equity filed a motion to compel Connecticut Specialty to produce several documents included on Connecticut Specialty's log. Although Connecticut Specialty has produced over half of the requested documents since the motion to compel was filed, it still asserts a privilege to the remaining 130 documents listed on its log. Most of the documents listed on Connecticut Specialty's log are e-mails that originated in Connecticut, between Connecticut residents. Connecticut Specialty has also filed a motion to compel Equity to produce the documents listed on its privilege log. Although Equity has since produced two of those documents, it still asserts that the remaining 27 documents are work product, and that some of the documents are both work product and attorney-client privileged. Following briefing, the Court held oral argument on October 17, 2007.

## II. LEGAL STANDARDS

### A. Attorney-Client Privilege

#### 1. Attorney-Client Privilege Under Illinois Law

Equity has brought breach of contract and reformation of contract claims against Connecticut Specialty, and seeks declaratory relief. This Court has federal jurisdiction over the state law claims based on supplemental jurisdiction.[1] In civil actions involving an element

---

[1] In addition to the state law claims against Connecticut Specialty, Plaintiffs have also brought claims against other party-defendants alleging violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and assert state law claims for breach of fiduciary duty, civil conspiracy, fraud, unjust enrichment and negligence. Subject

of a claim or defense to which state law applies, privilege is determined in accordance with state law. *Caremark, Inc., v. Affiliated Computer Servs., Inc.*, 192 F.R.D. 263, 265 (N.D. Ill. 2000); FED.R.EVID. 501. Accordingly, the issue of attorney-client privilege is governed by Illinois law. *Caremark,* 192 F.R.D. at 265; FED.R.EVID. 501.

Under Illinois law, to be entitled to the protection of the attorney-client privilege, a party must show that "the statement orginated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." *Caremark,* 192 F.R.D. at 265 (quoting *Hyams v. Evanston Hospital,* 587 N.E.2d 1127, 1130 (Ill. App. Ct. 1992)). Attorney-client privilege extends to both communication from client to attorney, as well as from attorney to client. *Midwesco-Paschen Joint Venture for Viking Projects v. IMO Indus., Inc.,* 638 N.E.2d 322, 327 (Ill. App. Ct. 1994). Confidential communications made by a client to representatives of the attorney, such as paralegals or secretaries, are also privileged. *Boettcher v. Fournie Farms, Inc.,* 612 N.E.2d 969, 973 (Ill. App. Ct. 1993).

The attorney-client privilege only protects those communications which relate to the giving or seeking of legal advice. *See Hyams,* 587 N.E.2d at 1130; *accord Baxter Travenol Laboratories v. Abbott Laboratories,* 1987 WL 12919 (1987). Simply funneling communications past an attorney will not make them privileged. *People v. Harris,* 570

---

matter jurisdiction of the RICO claims is based on 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), and jurisdiction over the state law claims is based on supplemental jurisdiction pursuant to 28 U.S.C. §1367.

N.E.2d 593, 597 (Ill. App. Ct. 1991).

### 2. Illinois' Control Group Analysis for Corporations

When a corporation is a client, Illinois applies a control group analysis and narrowly interprets the scope of the privilege in its application to employees of such a corporation. *Consolidation Coal Co. v. Bucyrus-Erie Co.,* 432 N.E.2d 250, 257-58 (Ill. 1982). Under this analysis, only those communications made by employees in top management positions who have the ability to make a final decision are privileged. *Rounds v. Jackson Park Hosp. & Med. Ctr.,* 745 N.E.2d 561, 568 (Ill. App. Ct. 2001); *Consolidation,* 432 N.E.2d at 258. In addition to top management, an employee's communications will be protected by the attorney-client privilege where "1) the employee is in an advisory role to top management, such that the top management would normally not make a decision in the employee's particular area of expertise without the employee's advice, and 2) that opinion does in fact form the basis of the final decision by those with actual authority." *Rounds,* 745 N.E.2d at 568*; Consolidation,* 432 N.E.2d at 258.

### 3. Waiver of the Privilege

The attorney-client privilege is based on a principle of confidentiality, and is subject to waiver if such communications are disclosed. *Profit Mgmt. Dev., Inc. v. Jacobson, Brandvik & Anderson,* 721 N.E.2d 826, 835 (Ill. App. Ct. 1999); *accord Vardon Golf Co., Inc., v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 532 (N.D. Ill. 2003). Generally, a party who voluntarily discloses privileged communications waives the privilege as to all other communications dealing with the same subject matter. *In re Grand Jury January 246,* 651

N.E.2d 696, 700 (Ill. App. Ct. 1995); *accord Vardon,* 213 F.R.D. at 532. A court should

make its determination as to whether a disclosure constitutes subject matter waiver on a case

by case basis, considering the principles of fundamental fairness. *See Vardon,* 213 F.R.D. at

532; *Abbott Labs. v. Andrx Pharm., Inc.,* 2006 U.S. Dist. LEXIS 55647, at *18 (N.D. Ill

2006).

## B.     Choice of Law Questions for Privileged Communications

Generally, for federal claims based on diversity or for pendant state claims, federal

district courts follow the choice-of-law rules of the state in which the district sits. *Baltimore*

*Orioles v. Major League Baseball Players Ass'n.,* 805 F.2d 663, 681 (7th Cir. 1986).  Illinois

courts apply Restatement (Second) of Conflict of Laws (Restatement) § 139 to choice-of-law

questions for privileged communications. *People v. Allen,* 784 N.E.2d 393, 394 (Ill. App. Ct.

2003); *Sterling Fin. Mgmt. v. UBS Painewebber, Inc.,* 782 N.E.2d 895, 904 (Ill. App. Ct.

2002). Restatement (Second) Conflict of Laws instructs:

> (2) Evidence that is privileged under the local law of the state which has the
> most significant relationship with the communication but which is not
> privileged under the local law of the forum will be admitted unless there is
> some special reason why the forum policy favoring admission should not be
> given effect.

Restatement (Second) Conflict of Laws § 139 (2). Thus, so long as a court finds a special

reason to do so, a court may decline to apply Illinois law to communications that would not

be protected under Illinois law, but that would be protected under the law of the state with

the most significant relationship to the communication. Under the Restatement, "the state

which has the most significant relationship with a communication will usually be the state

where the communication took place, which . . . is the state where an oral interchange between persons occurred, where a written statement was received, or where an inspection was made of a person or thing." Restatement (Second) Conflict of Laws § 139 (Comment e).

## C.     Work Product Doctrine

The attorney work-product doctrine protects "1) documents and tangible things otherwise discoverable; 2) prepared by or for another party or by or for that other party's representative; 3) in anticipation of litigation or for trial." *Hickman v. Taylor,* 329 U.S. 495 (1947); *In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil,* 244 F.R.D. 434, 440 (N.D. Ill. 2007); *Vardon,* 213 F.R.D. at 534; FED.R.CIV.P 26(b)(3). "Opinion" work product which reveals the  mental impressions or opinions of an attorney is not discoverable. *In re Application,* 244 F.R.D. at 440. Materials that are produced in the ordinary course of a party's business, and not to prepare for litigation, are outside the scope of the work product doctrine. *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 87 (N.D. Ill. 1992). To establish work product protection, a party must show that the primary motivating purpose behind the creation of a document was to aid in possible future litigation. *Id.* The party must also be able to prove the existence of objective facts establishing an identifiable resolve to litigate. *Id.*

The work-product doctrine is also subject to waiver by a party. *Vardon,* 213 F.R.D. at 534. Such a waiver occurs "when the protected communications are disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information." *Id.* Thus, in determining if a party's actions constitute a waiver, the court

should focus on whether the information is disclosed to an adversary, rather than whether the disclosure is voluntary. *Id.* Parties may be required to disclose certain documents to be used to refresh a witness's recollection for the purpose of testifying. *Murlas Living Trust v. Mobil Oil Corp.,* 1995 WL 124186 (N.D. Ill. 1995). Such a disclosure, however, generally does not waive the privilege, and only the specific material reviewed by the witness must be produced. *See S&A Painting Co., Inc., v. O.W.B. Corp.,* 103 F.R.D. 407, 408 (W.D. Pa. 1984).

## III. DISCUSSION

### A. Equity's Motion to Compel

Equity moves this Court to require Connecticut Specialty to produce 130 documents listed on Connecticut Specialty's privilege log. Connecticut Specialty asserts that such documents are protected by the attorney-client privilege. The Court has conducted an *in camera* inspection of the documents at issue, and makes the following rulings on the various categories of documents listed on Connecticut Specialty's privilege log:

#### 1. Connecticut Law applies to the issue of whether the attorney-client privilege extends to Connecticut Specialty employees.

Equity asserts that several of Connecticut Specialty's documents at issue are not privileged because they involve communications with employees not within the company's "control group." As stated above, where the client is a corporation, Illinois courts only extend the attorney-client privilege to those employees who are in the control group. Connecticut Specialty argues, however, that Connecticut law should govern this issue, and that under Connecticut law, its employees' communications would be protected. This Court agrees with

Connecticut Specialty.

First, Connecticut is the state with the most significant relationship to the communications at issue. The communications originated mainly in Connecticut, and are between Connecticut residents. Although some of the e-mails relate to the insurance policy, which was purchased by a company doing business in Illinois, the communications were created in Connecticut by Connecticut residents. Thus, Connecticut has the most signficant relationship to these communications.

Second, Connecticut law provides greater protection to these communications than Illinois law. As stated above, where a corporate entity is the client, Illinois courts apply the narrow control group analysis to company employees' communications, extending the attorney-client privilege only to the officers and agents of the company. The Connecticut courts, however, have rejected such an analysis. *See Shew v. Freedom of Info. Comm'n.*, 714 A.2d 664, 670, 671 n.11 (Conn. 1998) ("By limiting the privilege to officers and agents of the corporation or municipality, we frustrate the purpose of the privilege by discouraging the communication of relevant information by employees to attorneys seeking to render legal advice to the client corporation or municipality.") (quoting *Shew v. Freedom of Info. Comm'n,* 691 A.2d 29, 34) (Conn. App. Ct. 1997).

Instead, when the client is a corporate entity, the courts extend the privilege to employee communications, so long as four criteria are present: "(1) the attorney must be acting in a professional capacity for the corporation, (2) the communication must be made to the attorney by current employees or officials of the corporation, (3) the communication

must relate to the legal advice sought by the corporation from the attorney, and (4) the communication must be made in confidence." *Blumenthal v. Kimber Mfg., Inc.*, 826 A.2d 1088, 1096 (Conn. 2003). The party seeking to assert the privilege bears the burden of proving each element of the privilege. *Id.*

The employee communications at issue in this case meet these criteria. All of the attorneys involved in the communications were either in-house counsel, or outside counsel hired by the corporation. The individuals involved in the communications with the attorneys were employed with Connecticut Specialty at the time the communications were made. Thus, any confidential communications by Connecticut Specialty's employees relating to legal advice sought by the corporation is privileged under Connecticut law.

Finally, this Court finds special reason to apply Connecticut law to the extent that it affords greater protection to the communications at issue. When determining whether to exclude evidence that would otherwise be admitted under the local law of the forum state, the Court is to consider "1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved, 2) the relative materiality of the evidence that is sought to be excluded, 3) the kind of privilege involved, and 4) fairness to the parties." Restatement (Second) of Conflict of Laws § 139 (Comment d). In this case, as stated above, most of the 130 documents on Connecticut Specialty's log originated from Connecticut, and were created by Connecticut residents. Also, the more broadly interpreted attorney-client privilege under Connecticut law is well recognized in many states, as well as in federal law. Restatement (Second) of Conflict of Laws § 139 (Comment d) ("[T]he forum

will be more inclined to give effect to a foreign privilege that is well established and recognized in many states than to a privilege that is relatively novel and recognized in only a few states."); *See Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981) (extending the attorney-client privilege to the communications of employees not otherwise protected under the "control group" standard); B. Hamilton, *Conflict, Disparity, and Indecision: The Unsettled Corporate Attorney-Client Privilege,* 1997 Ann. Surv. AM. L. 629, 630, 633-641 (1997) (stating that, as of 1997, fourteen states had decided to adopt a simliar test to *Upjohn*, and that lower courts from several undecided states have followed *Upjohn*); *see also* J. Solovy, et al., *Protecting Confidential Legal Information,* SN009 A.L.I. - A.B.A. 549 (2007).

Lastly, and most importantly, the individuals making these communications likely relied on the privilege as it applies in Connecticut. Had they sought guidance on the scope of the privilege, all of the individuals involved in these communications would have likely consulted Connecticut law, rather than Illinois law, to determine whether their discussions would be privileged. *See* Restatement (Second) Conflict of Laws § 139 (Comment d) (stating that the state with the most significant relationship with the communication "is also the state to whose local law a person might be expected to look for guidance in determining whether to make a certain statement or to make certain information available."). Thus, out of fairness to the individuals involved in these communications, the Court applies Connecticut law to the employees' communications with their attorneys. Thus, to the extent that the other necessary elements exist to find such communications privileged, the Court extends the attorney-client privilege to the Connecticut Specialty employees.

**2. Documents containing attorney-client communications for the purpose of seeking or providing legal advice are privileged.**

      **A. Communications made directly to or from an attorney regarding legal advice (Log entries 1 - 4, 13, 15 - 16, 19, 21, 27, 38, 40, 46 - 50, 52, 56 - 57, 59 - 63, 65 - 68, 70, 72 - 78, 80 - 82, 85- 94, 96 - 97, 100 - 104, 106 - 112, 114 - 119, 121-122, 124 - 127 and 129) are privileged.**

Several of Connecticut Specialty's log entries reflect documents containing communications in which a Connecticut Specialty attorney relays legal advice to a Connecticut Specialty employee. Likewise, several documents contain communications from a Connecticut Specialty employee to the company's attorney seeking legal advice, or discussing the legal advice sought. These documents appear to have been made in confidence, excluding any outside parties. Thus, these documents are protected under the attorney-client privilege. Accordingly, the motion to compel this category of documents is denied.[2]

      **B. Communications made to or from an attorney through a paralegal regarding legal advice (Log entries 7 - 8, 10, 18, 20, 22, 25 - 26, 34 - 36, 41 - 43) are privileged.**

Several of the documents listed in Connecticut Specialty's log contain communications from a paralegal relaying legal advice to a Connecticut Specialty employee. In addition, several documents include communications from an employee to a paralegal

---

[2]Connecticut Specialty has disclosed certain documents to Equity with portions of those documents redacted. Where the Court finds any of those documents privileged, its ruling is confined to the redacted portions of those documents. Where the Court finds any of those documents not privileged, Connecticut Specialty is ordered to disclose the redacted portions of such documents to Equity.

seeking legal advice, or discussing the legal advice sought. As a representative of the attorney, the attorney-client privilege extends to a paralegal acting as a subordinate to the attorney. *Boettcher,* 612 N.E.2d at 973. Thus, these documents are also privileged, and the motion to compel this category of documents is denied.

3. **Documents containing communications between non-attorneys regarding legal advice (Log entries 44 - 45, 54, 84, 95, 113, 120, 123, 128, and 130) are privileged.**

The documents in this category all contain communications between non-attorney employees of Connecticut Specialty regarding the company's attorneys' legal advice. Although such communications do not involve an attorney or an attorney's agent directly, because the communications directly relate to the legal advice given to the non-attorneys, they are kept in confidence, and the non-attorneys are otherwise protected by the privilege, the Court finds such communications are privileged. *See Baxter Travenol Labs, Inc. v. Abbot Labs,* 1987 WL 12919 (N.D. Ill 1987). Thus, the motion to compel this category of documents is denied.

4. **Documents containing communications between attorneys regarding legal advice given to clients (Log entries 51, 55, 58, 64, 79, 83, and 98 - 99, 105) are privileged.**

These documents contain communications between various in house counsel and outside counsel regarding the legal advice given to Connecticut Specialty. Client confidences can be shared among multiple attorneys who represent the same client. *See Midwestern Univ. v. HBO & Co.,* 1999 WL 32928 (N.D. Ill. 1999). Thus, these documents are also privileged, and the motion to compel this category of documents is denied.

**5. Documents containing communications to third parties (Log entries 28-29) are no longer confidential and thus are not privileged.**

Connecticut Specialty lists two documents on its privilege log which contain communications to a third party. Log entries 28 and 29 consist of e-mails between counsel and employees of Connecticut Specialty. In addition, both of these e-mails were sent to Susan Chain, an employee of Special Risk Underwriting Managers, Inc. ("Special Risk"), which is an adversary of Connecticut Specialty. When communications otherwise protected by the attorney-client privilege become disclosed to an unprotected third party, such communications are no longer privileged. Although counsel for Connecticut Specialty argues that Special Risk and Connecticut Specialty were one and the same for the purposes of this communication, Ms. Chain was not an employee of Connecticut Specialty. Moreover, the Court is not persuaded by Counsel's argument, given that a previously disclosed e-mail, dated after the e-mails in Log entries 28 and 29, reveals a statement by Connecticut Specialty's attorney advising employees to no longer "include anyone at Special Risk on our internal e-mails" due to the need to protect attorney-client privilege. Pl. Reply, Ex. E. Moreover, Log entries 28 and 29 contain e-mails that were part of the documents already disclosed to Plaintiff. Pl. Reply, Ex. E; *See infra* III.A.6. Thus, because these e-mails were sent to a third party, and were already disclosed to Plaintiff, this category of documents are not privileged.

**6. Waiver of Privilege**

**A. Documents already disclosed (Log entries 5-6, 28-33, and 39) are waived and thus no longer privileged.**

14

Equity asserts that Connecticut Specialty previously disclosed several of the documents listed in its privilege log, and has attached copies of these documents to its brief. *See Pl. Reply in Support of Motion,* 8-11, Ex. C, D, E, F, and G. Regardless of the context in which Connecticut Specialty disclosed, such documents have been disclosed to Equity, have no longer remained confidential, and are thus no longer privileged. By producing these documents, Connecticut Specialty has waived its privilege, and thus the documents in this category must be produced. Accordingly, the motion to compel this category of documents is granted.

### B. Subject matter waiver does not apply.

Equity argues that this disclosure constitutes a subject matter waiver, and as a result, all other communications dealing with the same subject matter of those disclosed documents should also be disclosed. When selective disclosures are made during litigation for tactical purposes, the court will apply subject matter waiver. *Graco Children's Products, Inc. v. Dressler, Goldsmith, Shore & Milnamow, Ltd.*, 1995 WL 360590 (N.D. Ill. 1995). Such a determination, however, must be made on a case by case basis, and must be based on principles of fundamental fairness. *Id.*

Beyond Equity's assertion, the Court does not find that Plaintiff was acting improperly in disclosing these documents. Construing the subject matter narrowly, the Court does not find Connecticut Specialty to have selectively disclosed certain portions of the e-mail communication between the identified individuals, while retaining other incriminating portions for its own benefit. Thus, in the interest of fairness, the Court finds that subject

matter waiver does not apply.

**7. Documents containing communications between non-attorneys regarding legal advice to be sought (Log entries 12, 14, and 23-24) are not privileged.**

Although the attorney-client privilege extends to those company employees discussing legal advice already given by an attorney, the documents in this category contain communications between non-attorney employees regarding legal advice that has not yet been sought, but that the non-attorney would like to receive. For example, Log entry 12 involves a non-attorney employee asking another non-attorney employee for a copy of a legal agreement and to have an attorney begin working on a matter immediately. Log entry 14 involves a non-attorney telling another non-attorney to get information that was requested by an attorney. Log entries 23 and 24 involve a non-attorney asking a non-attorney to have attorneys look into a particular matter. While the attorney-client privilege extends to certain non-attorneys acting as agents to attorneys, the non-attorneys involved in these communications do not appear to be agents of the attorneys. Moreover, the non-attorneys involved in these communications appear to be speaking to one another in the context of their business relationship to each other, as it relates to various legal matters. They are not consulting the other for legal advice, nor are they discussing the confidential legal advice given to an attorney. At best, they are discussing information that they intend to relate to an attorney in confidence. However, the communications involved here are not yet made in confidence to an attorney or to the attorney's agent, nor are they made by an attorney or its agents. Thus, the documents listed in this category are not privileged, and the motion to

compel these documents is granted.

**8. Documents containing communications that do not primarily seek legal advice (Log entries 9, 11, 17, 37, 53, 69, 71) are not privileged.**

The documents in this category contain e-mail communications primarily made to non-attorneys regarding business, not legal, matters. Although some of the senders of these e-mails have copied an attorney, simply copying an attorney on an e-mail does not make the communications privileged. *Harris,* 570 N.E.2d at 597. The attorney-client privilege only extends to those communications involving legal advice, not business advice or other technical information. Thus, Log entries 11, 17, 37, 53, 69, and 71 are not privileged, and the motion to compel this category of documents is granted.

In addition, Log entry 9 primarily discusses a business matter, but contains just one sentence indicating that the author discussed this matter with others, including an attorney, and they "concur." Although this one sentence does involve a non-attorney employee discussing legal advice given by an attorney, the rest of the e-mail does not. Thus, Log entry 9 should be disclosed, but with the third to last sentence of the e-mail redacted.

**B.      Connecticut Specialty's Motion to Compel**

Connecticut Specialty moves this Court to require Equity to produce 29 documents listed in its privilege log. Equity has since produced two of these documents, and asserts that the remaining 27 documents are protected by the work product doctrine, and that several of these documents are also protected by the attorney-client privilege. The Court makes the following rulings on the various categories of documents listed in Equity's privilege log:

1. **All 27 documents contain information protected by the work product doctrine.**

Plaintiff asserts that all documents listed in its privilege log are protected by the work-product doctrine, and the Court agrees.

   A. **Equity anticipated litigation upon receipt of the September 5, 2000 letter**.

All of the documents listed in Plaintiff's log were created on or after September 5, 2000, the date on which Plaintiff received a notice of non-renewal from Connecticut Specialty. This is also the date when Jim Fiffer, Associate General Counsel for Equity, asserts that he first anticipated litigation relating to the policy Equity purchased from Connecticut Specialty.

The Court agrees with Mr. Fiffer's assertion. Mr. Fiffer stated in his deposition that he went into "full litigation mode" upon receiving the September 5, 2000 letter. Pl. Surreply, Ex. A, at 237. In addition, Mr. Fiffer has submitted an affidavit supporting the assertion that Equity anticipated litigation upon receiving the September 5, 2000 letter. Pl. Resp., Ex. E. The November 3, 2000 letter from Equity to Connecticut Specialty also supports this assertion. Equity's November 3 letter makes repeated references to potential litigation, and threatens Connecticut Specialty with litigation should they not be able to otherwise resolve the matter at issue. Pl. Resp., Ex. B. Moreover, the letters sent by Mr. Fiffer dated September 14, 2000 and October 3, 2000 are also the types of letters one would expect from an attorney who is preparing for the possibility of litigation. Pl. Surreply Ex. B & C. Accordingly, the Court finds that Equity anticipated litigation with Connecticut Specialty upon receiving the

letter on September 5, 2000.

**B. Documents created by an attorney regarding the case that contain the mental impressions of that attorney (Log entries 1-11, 14-15, 23, 26 and 29) are protected.**

Several of the documents in Equity's log were created by an attorney and include the thoughts and mental impressions of the attorney regarding this case. This type of document is exactly the kind of "opinion" work product that the doctrine seeks to protect. These documents are protected by the work product doctrine, and the motion to compel this category of documents is denied.

**C. Documents containing an attorney's notes from communications with another party (Log entries 12-13, 25, and 27-28) contain the mental impressions of that attorney and are thus protected.**

The documents in this category also contain the thoughts and mental impressions of an attorney based on communications that the attorney had with another party in the case. The notes contained in these documents have been prepared in anticipation of this litigation, and contain the attorney's thoughts about the case. Accordingly, these documents are also work product protected by the doctrine. Accordingly, the motion to compel this category of documents is denied.

**D. Documents containing communication between attorneys regarding the case (Log entries 17-22 and 24) are protected.**

The documents in this category contain communication between different attorneys representing Equity regarding this case. The documents contain the attorneys' thoughts and

mental impressions of this case, and thus also constitute work product. Therefore, the motion to compel the documents in this category is also denied.

2. **Documents containing communication between attorneys regarding this litigation (Log Entries 17-22, 24 and 29) are privileged.**

Several of the log entries on Equity's privilege log include documents that contain communications between attorneys regarding this litigation. Most of these documents include communications between in-house counsel and outside counsel regarding the litigation, but some also contain communications just between in-house counsel. As stated above, both types of communication are privileged, and thus these documents are also privileged. The motion to compel this category of documents is denied.

3. **Any disclosure previously made by Equity does not trigger subject matter waiver.**

Equity previously disclosed certain documents for the purpose of refreshing a witness's recollection in preparation for his deposition. Equity disclosed these documents purusant to the rules of this Court, and expressly stated that it did not waive its right to assert attorney-client privilege or work product in the future. Equity did not disclose these documents for tactical purposes, nor does it appear it withheld any incriminating documents on the same subject matter for its advantage. Thus, the Court will not apply subject matter waiver to the documents that Equity otherwise disclosed in good faith.

## IV.  CONCLUSION

After an *in camera* inspection of the documents at issue, the Court finds the parties rightfully withheld most of the documents due to their being protected by the attorney-client privilege or the work-product doctrine. The attorney-client privilege does not protect all communications that a party asserts as privileged, however, and those communications that are not kept confidential or that do not primarily relate to legal advice must be produced. **For the reasons set forth in this opinion, Equity's motion to compel the production of documents on Connecticut Specialty's privilege log is granted in part and denied in part. Connecticut Specialty's motion to compel the production of documents on Equity's privilege log is denied.**

**SO ORDERED THIS 16th DAY OF NOVEMBER, 2007.**

_Morton Denlow_
_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

David J. Bradford
Andrew William Vail
Daniel Scott Dooley
R. Douglas Rees
Timothy W. Burns
Jenner & Block LLP
330 North Wabash
Chicago, IL 60611

Counsel for Plaintiff


Bruce Michael Lichtcsien
Gregory D. Hopp
Daniel R. Johnson
Matthew T Walsh
Cozen & O'Connor
222 South Riverside Plaza, Suite 1500
Chicago, IL 60606

Counsel for Defendant Royal Surplus Lines as successor to Connecticut Specialty
Company

Michael Joseph Meyer
Kurt Brendan Drain
Tribler Orpett and Meyer, P.C.
225 West Washington Street, Suite 1300
Chicago, IL 60606

Counsel for Defendant Kendall Risk Management, Inc.




Regan A. Shulman

Robert Lewin
Royce Cohen
Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038

Counsel for Defendant Royal Surplus Lines as successor to Connecticut Specialty
Company

Eric Macey
Novack and Macey, LLP
100 North Riverside Plaza
Suite 1500
Chicago, IL 60606

Counsel for Defendant Royal Surplus Lines as successor to Connecticut Specialty
Company